# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 20
The People &c.,
   Respondent,
  v.
Jose Perez,
   Appellant.

Harold V. Ferguson, Jr., for appellant.
Jean M. Joyce, for respondent.

FEINMAN, J.:

We are called upon to determine whether defendant Jose Perez was properly

assessed 30 points under risk factor 9 of the Sex Offender Registration Act (SORA) risk

assessment instrument for his prior New Jersey conviction for lewdness. Drawing from

our decision in North v Board of Examiners of Sex Offenders of State of New York (8 NY3d 745 [2007]), we hold that defendant's prior New Jersey conviction is tantamount to endangering the welfare of a child under New York law. Thus, an assessment of 30 points under risk factor 9 was warranted, and defendant's adjudication as a level two sex offender was correct.

I.

"[T]he purpose underlying SORA [is] to protect the public from sex offenders" (People v Mingo, 12 NY3d 563, 574 [2009]). To that end, by legislative mandate, the New York Board of Examiners of Sex Offenders (the Board) has created specific "guidelines and procedures" designed to assess the risk that a sex offender will reoffend and the likely harm that would be inflicted upon the reoffense (Correction Law § 168-l [5]; People v Sincerbeaux, 27 NY3d 683, 691 [2016]; see generally Sex Offender Registration Act, Risk Assessment Guidelines & Commentary, 2006 [hereinafter "Guidelines"]). The Legislature provided the Board with broad authority to design the Guidelines by basing them, among other things, on "criminal history factors to be considered in determining risk, including . . . . the number, date, and nature of prior offenses" (Correction Law § 168-l [5] [b] [iii]).

In advance of a sex offender's release from prison, the Board must complete a risk assessment instrument, assessing points based on the risk factors set forth in the Guidelines, to recommend to the SORA court "one of three-statutorily-prescribed levels of notification—level one, two, and three in ascending order of risk—based on an offender's calculated risk to reoffend" (People v Francis, 30 NY3d 737, 743 [2018], citing Correction Law § 168-l [6]). An offender's risk-level designation typically corresponds to the total

number of points assigned for the 15 risk factors enumerated in the Guidelines (see Guidelines at 3).

The points system was designed to be objective yet "individualized," "eschew[ing] per se rules" (see Guidelines at 2-3). In keeping with this approach, if "special circumstances" are present, the Board or court may depart from the presumptive risk level corresponding to the offender's total risk assessment points score (see Guidelines at 4; People v Howard, 27 NY3d 337, 341 [2016], citing People v Gillotti, 23 NY3d 841, 861 [2014]; People v Johnson, 11 NY3d 416, 421 [2008]). To that end, although the Board must rely on "clear and convincing evidence of the existence of [a] factor" in order to assess points, it need not rely only on "the crime of conviction" that subjects a defendant to registration under SORA, but may derive evidence from, among other things, "the sex offender's admissions; the victim's statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or . . . any other reliable source" (Guidelines at 5; see also Mingo, 12 NY3d at 576-577, citing Correction Law § 168-n [3]).[1]

Risk factor 9 of the Guidelines, which concerns the "Number and Nature of Prior Crimes," provides that an offender must be assessed 30 points for, as relevant here, "a prior conviction or adjudication for . . . a misdemeanor sex crime, or endangering the welfare of a child, or any adjudication for a sex offense" (Guidelines at 13; see also Correction Law § 168-l [5] [b] [iii]). The rationale for assessing points for criminal history is that it bears

---

[1] Similarly, the Board may rely on youthful offender adjudications and juvenile delinquency findings as "reliable indicators of wrongdoing" in connection with assessing "an offender's likelihood of reoffense and danger to public safety," even though they are not technically criminal convictions (see Guidelines at 6).

strongly on offenders' "likelihood of sexual recidivism, particularly where [their] past includes violent crimes or sex offenses" (see Guidelines at 13).[2]  With respect to endangering the welfare of a child—which is not a registrable sex offense under the Correction Law or one of the "sex offenses" listed under section 130 of the Penal Law— the Board assesses 30 points under risk factor 9 and presumptively treats such a conviction or adjudication "as if it were a sex crime because it generally involves sexual misconduct, especially when it is part of a plea bargained disposition" (see Guidelines at 14; Sincerbeaux, 27 NY3d at 689; see also Mem from Div of Probation and Correctional Alternatives, dated July 21, 1995, Bill Jacket, L 1995, ch 192).[3]

## II.

In 1999, defendant was convicted in New Jersey for lewdness in the fourth degree, a felony offense,[4] for which he was sentenced to two years' probation (see NJ Stat Ann §

_____

[2] Conversely, offenders who "ha[ve] a prior felony conviction or adjudication for a crime other than a Class A felony of Murder, Kidnap[p]ing, or Arson, a violent felony, or a sex offense" are assigned 15 points under risk factor 9 (Guidelines at 13).  Offenders who have "any criminal history other than a felony or sex crime" are assigned 5 points under the same factor (Guidelines at 13).

[3] Under New York law, a person commits endangering the welfare of a child, as relevant here, where "[h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old" (Penal Law § 260.10 [1]).

[4] We note that New Jersey does not characterize offenses as "felonies" or "misdemeanors" corresponding to the common law distinction followed by New York and other states, but deems "indictable crimes" or "[m]isdemeanors . . . punishable by imprisonment for more than a year in state prison" as "sufficiently equatable with common law felony" (State v Doyle, 42 NJ 334, 348-349 [1964]).  Lewdness in the fourth degree is considered an indictable crime in New Jersey, and thus, for purposes of clarity, we refer to it hereinafter as a "felony."

2C:14-4 [b] [1]).[5] The conduct underlying defendant's New Jersey conviction involved him "remov[ing] the towel that he had been wearing" in his home and "expos[ing] himself to the [12-year-old] victim via the adjacent window." Defendant blew kisses at the victim, who was located in a nearby apartment, and subsequently "exposed himself" two more times to the victim, her brother, and her cousin, also through a window. The record also reflects that defendant "fondl[ed] and strok[ed] his penis in view of [the victim] to sexually gratify himself." In 2003, defendant was convicted by guilty plea in Florida of felony lewd or lascivious molestation of a 10-year-old girl and sentenced to nine years' imprisonment (see Fla Stat § 800.04 [5] [a], [b]). Defendant admitted to the conduct underlying both of his New Jersey and Florida convictions.[6]

In November 2010, defendant was released from his Florida incarceration to the custody of New York authorities pursuant to a warrant issued in connection with the prosecution of two mid-1990s drug-related crimes. Defendant was thereafter sentenced in New York to prison. In advance of his conditional release from prison nearly two years

---

[5] In New Jersey, lewdness offenses are encompassed under a chapter entitled "Sexual Offenses" (see Chapter 14, New Jersey Code of Criminal Justice). However, the provision under which defendant was convicted is not a registrable "sex offense" in New Jersey (see NJ Stat Ann § 2C:7-2 [b] [1]-[3]).

[6] Defendant has also conceded, as relevant here, his New Jersey conviction (see e.g. Appellant's Br. at 8 [the New Jersey incident "led to a guilty plea to lewdness and a two year probationary sentence in March 1999"]; id. at 20 ["(A)ppellant's New Jersey lewdness conviction (See NJSA § 2C:14-4) did not constitute a sex offense as defined in the Correction Law or in Article 130 of the Penal Law"] [emphasis added]). In any event, as set forth below, the record adequately demonstrates that defendant was convicted of lewdness in the fourth degree in New Jersey. Consistent with the Guidelines, we stress that our holding should in no way be interpreted to allow for an assessment of 30 points under risk factor 9 based on a defendant's conduct in the absence of a resultant "conviction" or "adjudication" (cf. dissenting op at 8).

later, defendant's risk level was assessed by the Board because his Florida felony conviction was a registrable sex offense in Florida qualifying him for SORA registration in New York (see Correction Law § 168-a [d] [ii]). After producing a case summary and completing a risk assessment instrument, the Board recommended that defendant be classified a level two sex offender based on a total risk assessment score of 85 points, including a 30-point assessment under risk factor 9 for his criminal history involving his prior New Jersey felony conviction for lewdness.[7]

At the SORA court hearing, defendant challenged the assessment of 30 points under risk factor 9, asserting that his New Jersey lewdness conviction was neither a registrable offense in New Jersey nor did the comparable offense under New York law—public lewdness (a misdemeanor)—subject defendant to SORA registration in New York (see Penal Law § 245.00 [b] [i]). At the two-part hearing in the SORA court, the People asserted that they were requesting 30 points under risk factor 9 for "a prior conviction for a sexual crime." The People maintained that defendant's prior conviction involved, among other things, conduct within the scope of the New York offense of endangering the welfare of a child, which the Guidelines provide must receive an assessment of 30 points under risk factor 9. In doing so, the People relied on the Board's risk assessment instrument for

---

[7] A level two designation is warranted where the offender's risk of recidivism is moderate, or the offender's total risk assessment score is more than 70 but less than 110 points (Correction Law § 168-l [6] [b]). Defendant's designation was otherwise based upon his sexual contact with the breasts and buttocks of the 10-year-old victim in Florida (risk factor 2, 10 points), the victim's young age (risk factor 5, 30 points), and defendant's history of drug and alcohol abuse (risk factor 11, 15 points). However, he was not designated a sexually violent offender, sexual predator, or predicate sex offender.

defendant and case summary prepared in connection therewith, defendant's NYSID sheet containing his entire criminal record, including his prior New Jersey "conviction for lewdness[,]" New Jersey investigation and arrest reports for the New Jersey incident leading to defendant's conviction, including a narrative from an officer who responded to the incident, a certified copy of a transcript of an interview with the 12-year-old victim by a police lieutenant, an arrest warrant for defendant, and defendant's sex offender details page with the New York Division of Criminal Justice Services, among other things. The People also noted that they had received and were relying upon "the judgment and conviction for [defendant's New Jersey] offense" from the Lyndhurst Police Department. Defense counsel, in turn, referred to the judgment produced by the People and, at one point, quoted from NJ Stat Ann § 2C:14-4 (b) (1), noting "[t]hat document says that [defendant] did expose his intimate parts for purpose of arousing or gratifying the sexual desire of the actor under the circumstances where the actor knew or reasonably expected he was likely to be observed by a child who is less than 13 years of age."

The SORA court adopted the Board's recommendation. The court accepted the People's reasoning that the "conduct underlying [the] conviction . . . was considered sexual in nature" and that "the female complainant was 12 years of age at the time of the incident." The SORA court deemed "irrelevant" the proposition that defendant's New Jersey felony conviction would constitute a misdemeanor in New York. The Appellate Division affirmed but, unlike the SORA court, concluded that defendant's New Jersey conviction of lewdness in the fourth degree was a "misdemeanor sex crime" warranting 30 points under risk factor 9 of the Guidelines (162 AD3d 1083 [2d Dept 2018]). This Court granted defendant leave

to appeal (32 NY3d 1042 [2018]), and we now affirm on different grounds.

### III.

The issue here arises from a gap in the Guidelines and the Correction Law, which fail to specifically account for the impact of out-of-state convictions when considering the import of sex offenders' criminal history for purposes of evaluating their risk of reoffense. As relevant to this appeal, we must determine whether it was proper to assess defendant 30 points under risk factor 9 for his out-of-state lewdness conviction as a "prior conviction or adjudication for . . . endangering the welfare of a child" under New York law.

Initially, we need not defer to the Board's construction of SORA where, as here, "the question is one of pure statutory reading analysis, dependent only on accurate apprehension of legislative intent" (Francis, 30 NY3d at 746 [internal quotation marks and citation omitted]). "At a SORA hearing, the People must prove the facts to support a SORA risk-level classification by clear and convincing evidence" (People v Howard, 27 NY3d 337, 341 [2016], citing Correction Law § 168-n [3]), and "[t]he court is not bound by the Board's recommendations but, rather, must make its own determinations based on the evidence" (People v Cook, 29 NY3d 121, 125 [2017]). "Where the hearing court's findings, expressly made under the proper evidentiary standard, are affirmed by the Appellate Division, this Court's review is limited to whether the decisions below are affected by an error of law or are otherwise not supported by the record" (People v Lashway, 25 NY3d 478, 483 [2015]).

A.

At the outset, we must resolve whether reliance on the underlying conduct of a prior foreign conviction is appropriate as a matter of law for purposes of assessing points under risk factor 9 when conducting a SORA risk-level determination. Under these circumstances, we hold that it is.

Our analysis of the New Jersey conviction starts with North v Board of Examiners of Sex Offenders of State of New York, wherein we considered whether the defendant was required to register as a sex offender as a result of his federal conviction for possession of child pornography (8 NY3d 745 [2007]). That question turned on the "essential elements" provision in SORA, which defines "sex offense," in relevant part, as "a conviction of an offense in any other jurisdiction which includes all of the essential elements of any [registrable sex offense in New York listed in section 168-a (2) of the Correction Law]" (Correction Law § 168-a [2] [d] [i] [emphasis added]). We concluded that, with respect to registrable offenses, the "essential elements" provision "requires registration whenever an individual is convicted of criminal conduct in a foreign jurisdiction that, if committed in New York, would have amounted to a registrable New York offense" (North, 8 NY3d at 753).

Specifically, we determined that "the Board [must] compare the elements of the foreign offense with the analogous New York [registrable] offense to identify points of overlap" and "[w]hen the Board finds that the two offenses cover the same conduct, . . . the foreign conviction is the equivalent of the registrable New York offense for SORA purposes" (id. at 753). "In circumstances where the offenses overlap but the foreign

offense also criminalizes conduct not covered under the New York offense, the Board must review the conduct underlying the foreign conviction to determine if that conduct is, in fact, within the scope of the New York offense" (id.).

Hence, we expressly rejected the application of the strict equivalency standard used to determine whether a prior foreign conviction is a predicate conviction for purposes of mandatory enhanced recidivist sentencing pursuant to article 70 of the Penal Law (see North, 8 NY3d at 752). The strict equivalency standard permits the examination of only the elements of the crime that are the subject of the foreign conviction to determine whether that conviction corresponds to a New York felony (see People v Muniz, 74 NY2d 464, 467-468 [1989]). It does not involve a review of the allegations in the accusatory instrument unless the foreign crime describes several different acts—both misdemeanor and felony—as criminal (see id.; cf. People v Gonzalez, 61 NY2d 586, 590-591 [1984]). This is because "[a]t bottom, the strict equivalency test protects from the imposition of a predicate felony offender sentence based on the mere *accusations* underlying the foreign conviction—allegations, of course, of which a defendant may not have been convicted" (People v Helms, 30 NY3d 259, 263-264 [2017]; People v Jurgins, 26 NY3d 607, 613 [2015]). In the SORA registration context, on the other hand, we reasoned that the strict equivalency standard was "not the optimal vehicle to effectuate SORA's remedial purposes" and it was thus appropriate to utilize a more flexible approach that allowed consideration of the underlying conduct of a foreign conviction in addition to comparing the essential elements of the foreign and New York offenses (North, 8 NY3d at 751, 752).

The analysis set forth in <u>North</u> is equally apt when considering, as here, how to assess points for a prior foreign conviction for purposes of determining the sex offender's risk to the community and concomitant level of notification to which the offender must conform.[8] Significantly, as we concluded with respect to registrable offenses in <u>North</u>, the concerns underlying the application of the strict equivalency test are mitigated in the context of a civil SORA risk-level determination. As we have noted on several occasions, "SORA 'is not a penal statute and the registration is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime'" (<u>People v Gravino</u>, 14 NY3d 546, 556 [2010], quoting <u>North</u>, 8 NY3d at 752; <u>People v Windham</u>, 10 NY3d 801, 802 [2008], citing <u>Doe v Pataki</u>, 120 F3d 1263 [2d Cir 1997], <u>cert</u> <u>denied</u> 522 US 1122 [1998]). As opposed to the penal purposes of enhanced sentencing, the ultimate and "paramount concern" of the SORA risk-level assessment, is "an accurate determination of the risk a sex offender poses to the public" (<u>Mingo</u>, 12 NY3d at 574). Thus, SORA's remedial purposes underlie both the initial registration determination and the secondary risk assessment level determination bearing on the frequency of registration and degree of community notification required.

---

[8] Indeed, the Appellate Division has seen fit to conduct such an analysis (<u>see</u> <u>e.g.</u> <u>People v Barrier</u>, 58 AD3d 1086, 1087 [3d Dept 2009] [comparison of "essential elements" of non-registrable foreign convictions to New York registrable and non-registrable sexual offenses warranted a 30-point assessment under risk factor 9 because "they unquestionably reflect upon defendant's likelihood of reoffense and danger to public safety"], <u>lv</u> <u>denied</u> 12 NY3d 707 [2009]; <u>People v Wroten</u>, 286 AD2d 189, 192 [4th Dept 2001]; <u>cf.</u> <u>People v Crews</u>, 127 AD3d 491 [1st Dept 2015] [in considering whether a foreign conviction warranted a 30-point assessment under risk factor 9, the People could not meet their burden absent evidence of the underlying facts of the crime]).

For those reasons, assessing points under risk factor 9 for foreign convictions similarly warrants a less rigid approach to allow for an individualized determination that fully captures the offender's potential risk to the public. Examining, where necessary under the "essential elements" test, the underlying conduct of a foreign conviction to compare it to—for example—the New York offense of endangering the welfare of a child, an offense explicitly contemplated by the Board as germane to an offender's risk of recidivism, effectuates the remedial purposes of SORA and adheres to the plain language of the Correction Law and the Guidelines. Moreover, reliance on evidence of an offender's conduct underlying the foreign judgment of conviction is entirely consistent with the available information on which a SORA court may rely when making a risk-level determination, including "relevant . . . reliable hearsay evidence submitted by either party" such as the Board's case summary, an unsworn victim statement, or the sex offender's admissions (Correction Law § 168-n [3]; Mingo, 12 NY3d at 576-577; see also People v Diaz, No. 37 SSM 28, 2020 WL 768680, at *1 [NY Feb 18, 2020]). Accordingly, the Board and courts should apply the North "essential elements" test when assessing whether, for SORA purposes, a foreign conviction is comparable to endangering the welfare of a child under New York law.

B.

Next, we must determine whether, applying the North "essential elements" test, defendant's New Jersey lewdness conviction is comparable to endangering the welfare of a child in New York, warranting the assessment of 30 points under risk factor 9 of the Guidelines. Because defendant's New Jersey conviction is comparable to the New York

offense of endangering the welfare of a child, it was proper to assess defendant 30 points

for his prior criminal history (see Sincerbeaux, 37 NY3d at 689).[9]

A comparison of the elements of defendant's New Jersey conviction and the

endangering the welfare of a child offense in New York reflects considerable but not exact

overlap. The New Jersey statute under which defendant was convicted criminalizes actors'

"expos[ure] [of] [their] intimate parts for the purpose of arousing or gratifying . . . [their]

sexual desire . . . under circumstances where [they] kn[ew] or reasonably expect[ed] [they]

[were] likely to be observed by a child who [wa]s less than 13 years of age where the actor

[wa]s at least four years older than the child" (NJ Stat Ann § 2C:14-4 [b] [1]). New York's

crime of endangering the welfare of a child forbids, as relevant here, a person to

"knowingly act[] in a manner likely to be injurious to the physical, mental or moral welfare

---

[9] Though beside the point, we agree that defendant was never convicted or even charged (so far as the record reflects) with endangering the welfare of a child in New Jersey (see dissenting op at 10, 11). The dissent maintains that a more "straightforward comparison" would be between lewdness statutes (dissenting op at 15-16); however, the name of an out-of-state conviction is not conclusive of what may constitute an "analogous" offense in New York for purposes of applying North (8 NY3d at 753; see also e.g. People v Kruger, 88 AD3d 1169, 1171 [3d Dept 2011] [comparing "lewd assault on a male child" in Florida to "sexual abuse in the second degree" in New York]). Under the first step of the North analysis, we compare an out-of-state, non-registrable conviction with "any" statutorily-defined registrable sex offense in New York (see Correction Law § 168-a [2] [d] [i]) "to identify points of overlap" (North, 8 NY3d at 753) and ultimately determine whether a defendant must register as a sex offender in New York. Similarly, here, we compare an out-of-state, non-registrable conviction with an expressly identified offense that the Board has deemed sufficient to award 30 points under the Guidelines in order to determine the extent of obligations and community notification attendant to defendant's sex offender adjudication in New York. We also note that despite the similarity in names, the relevant New Jersey and New York lewdness statutes are quite different in one important respect. Namely, unlike New Jersey lewdness in the fourth degree (and New York endangering the welfare of a child), the New York public lewdness statute does not require the victim to be a minor (see Penal Law § 245.00 [b] [1]).

of a child less than seventeen years old" (Penal Law § 260.10 [1]). "Actual harm to the child need not result for liability under the [endangering the welfare of a child] statute to attach" but rather the defendant must "act in a manner which is likely to result in harm to the child, knowing of the likelihood of such harm coming to the child" (People v Simmons, 92 NY2d 829, 830 [1998]).

Comparing the statutes, the New Jersey statute's victim age threshold is narrower than that in the New York statute and is thus inclusive of the New York age threshold (see North, 8 NY3d at 750-751). Though both share a knowledge element, they are to different aspects of the crime. Unlike New Jersey public lewdness in the fourth degree (criminalizing defendant's "expos[ure] [of] his intimate parts for the purpose of arousing or gratifying [his] sexual desire" while knowing or reasonably expecting a child would see (NJ Stat Ann § 2C:14-4 [b] [1])), endangering the welfare of a child under New York law criminalizes conduct "likely to be injurious to the physical, mental or moral welfare of a child"—an element not expressly present in the New Jersey lewdness offense (Penal Law § 260.10 [1]; see also State v Hackett, 166 NJ 66, 76 [2001] [commenting that "(i)n the crime of endangering the welfare of children, the potential effect on the victim constitutes an additional factor not required for a lewdness prosecution"]). Because the offenses overlap but the New Jersey offense also criminalizes conduct that may not be covered under the New York offense," we may "review the conduct underlying the foreign conviction to determine if that conduct is, in fact, within the scope of the New York offense" (North, 8 NY3d at 753). Applying that analysis, we conclude that the conduct underlying defendant's New Jersey conviction was within the scope of the New York

offense of endangering the welfare of a child for purposes of assessing 30 points under risk factor 9.

Here, it is undisputed that defendant knowingly exposed himself to the 12-year-old victim and made sexual and offensive gestures toward her and her teenage family members. The record similarly reflects that defendant understood that his actions as directed toward the victim were "likely to be injurious to the physical, mental or moral welfare of a child" (Penal Law § 260.10 [1]; see Simmons, 92 NY2d at 830; Mingo, 12 NY3d at 574).

New York courts have emphasized the similarities between New York's lewdness and endangering the welfare of a child offenses and found that conduct akin to defendant's actions here constituted endangering the welfare of a child. In People v Edelstein, for example, the Appellate Division upheld the defendant's convictions for both endangering the welfare of a child and public lewdness where, like here, the defendant "stood [naked] in his doorway masturbating in full view of and while looking directly at a 10-year-old girl" (155 AD3d 1592, 1592-1593 [4th Dept 2017]). Similarly, in People v Morey, the Appellate Division upheld a conviction for endangering the welfare of a child where the defendant masturbated in front of a 6-year-old child (224 AD2d 730, 732 [3d Dept 1996]; see also People v Kolupa, 59 AD3d 1134, 1135 [4th Dept 2009] [the exposure of one's genitals to a seven-year-old is enough to constitute endangering the welfare of a child in New York], affd on other grounds 13 NY3d 786 [2009]).[10]

---

[10] Notably, in State v Hackett, the Supreme Court of New Jersey also equated conduct underlying New Jersey's lewdness and endangering the welfare of a child offenses, noting that "the nudity of the defendant" is the "common denominator that is an element of both [offenses]" (166 NJ at 76).

Insofar as the conduct underlying defendant's New Jersey conviction was within the scope of endangering the welfare of a child under New York law, the courts below did not err in assessing defendant 30 points under risk factor 9 when determining defendant's presumptive risk level.[11]  Accordingly, the order of the Appellate Division should be affirmed, without costs.

---

[11] We do not opine, however, on whether the same analysis would be proper in connection with any of the categories of convictions or adjudications subject to a 30-point assessment under risk factor 9 other than endangering the welfare of a child.  Moreover, our analysis is limited to consideration of a prior foreign conviction when conducting a risk-level assessment for purposes of SORA.

People v Jose Perez

No. 20

FAHEY, J. (concurring):

I agree with the result reached by the Court, and I vote to affirm, but I cannot join the majority opinion. As the dissent explains, the People disavowed and therefore did not preserve the argument that defendant's criminal conviction in New Jersey was tantamount

to endangering the welfare of a child.  Accordingly, the Court of Appeals has no power to review the issue (see generally Hecker v State of New York, 20 NY 3d 1087, 1087 [2013]).

Rather, the question before the Court is whether the New Jersey conviction amounted to a conviction of "a misdemeanor sex crime," within the meaning of risk factor 9 in the Sex Offender Guidelines (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, Factor 9 [3] [2006]).  In my view, this question was adequately preserved.  Since the second SORA hearing, the parties have not disputed that defendant has a New Jersey conviction of lewdness in the fourth degree (NJ Stat § 2C:14-4 [b] [1]).  At that hearing, the parties discussed whether the New Jersey crime is equivalent to the New York misdemeanor of public lewdness (see Penal Law § 245.00).  Although the People could have stated their position more clearly, the People conveyed that the conduct by defendant underlying his New Jersey conviction showed that he committed a crime equivalent to public lewdness or a similar sexual misdemeanor in New York.  For his part, defendant maintained that a conviction under Penal Law § 245.00 would not amount to "a misdemeanor sex crime."

I would apply a North-type analysis, such as the majority proposes (see majority op at 8-11, citing Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745 [2007]), to decide whether defendant's New Jersey conviction is equivalent to a New York misdemeanor that is sexual in nature. Review of the underlying conduct would be necessary if the elements of the foreign crime of conviction and the purported corresponding New York crime overlap but the foreign offense criminalizes conduct not covered under the New York offense.  Here, any conduct proscribed by the New Jersey

lewdness statute would also be criminalized by the New York public lewdness statute (compare NJ Stat Ann § 2C:14-4 [b] [1] with Penal Law § 245.00 [b] [i]).

I would adopt the Appellate Division's analysis and conclusion that defendant's "New Jersey conviction constituted 'a misdemeanor sex crime' under New York law for the purposes of risk factor [9]" (People v Perez, 162 AD3d 1083, 1084 [2d Dept 2018]). The fact that public lewdness is not itself a registrable sex offense under Correction Law § 168-a (2) is not dispositive of whether it is a "sex crime" under risk factor 9 (see People v Izzo, 26 NY3d 999, 1002 [2015]; People v Barrier, 58 AD3d 1086, 1087 [3d Dept 2009]; accord Matter of Registrant J.M., 167 NJ 490, 507 [2001])).  Nor is it significant that Penal Law § 245.00 is codified in a part of the Penal Law other than article 130 ("Sex Offenses"). Notably, the Commentary on the Sex Offender Guidelines itself gives "public lewdness" as an example of a "sex crime" (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 2 n 2).

For these reasons, I would hold that there is record support for the lower courts' conclusion that the People proved by clear and convincing evidence that defendant's New Jersey conviction was equivalent to a New York misdemeanor sex crime for the purposes of calculating risk factor 9.

People v Jose Perez

No. 20

WILSON, J. (dissenting):

If hard cases make bad law, botched cases make even worse law.  Had the People, in the Sex Offender Registration Act (SORA) risk-level determination for Mr. Perez, either relied on the New Jersey conviction instead of adamantly insisting they were not, or sought

in the alternative an upward departure, this case would have been resolved simply in a way fully consistent with the Guidelines.  Instead, this case comes to us in a tortured form not likely to repeat itself.  In resolving it, the majority conflates the criteria for determining who must register as a sex offender (a legislative determination) with the risk of further offense by a sex offender (a psychological determination).  En route, the majority abandons (temporarily, one assumes) our preservation doctrine, deciding this case on a ground not merely ignored – but expressly repudiated – by the People below.  The irony is that neither of those maneuvers would have been necessary to adjudicate Mr. Perez a level-two sex offender had the People relied on the New Jersey statute (instead of Mr. Perez's conduct), or sought an upward departure, which is customarily sought in circumstances such as these.

I.

Briefly, federal legislation enacted in 1994 compelled states to adopt laws identifying sex offenders, requiring their registration, and assigning risk levels to them (42 USC § 14071 [the Jacob Wetterling Act]).  New York enacted SORA in 1995 to comply with the federal mandate (Correction Law § 168 et seq.).  By statute, New York has identified the offenses in our Penal Law that are "registerable" offenses; that is, if convicted of an enumerated crime, a person is deemed a "sex offender" and will appear on New York's sex offender registry (Correction Law § 168-a[2]).  The statutory determination as to which crimes are registerable is largely driven by federal requirements from the federal Jacob Wetterling Act.

The New York registry, in turn, differentiates among sex offenders based on an assessment of risk.  Offenders are classified as either level one (low risk), level two

(moderate risk), or level three (high risk) (Correction Law § 168-l[6][a]-[c]).  SORA also created the New York Board of Examiners of Sex Offenders (the Board), composed of "experts in the field of the behavior and treatment of sex offenders," who were charged with "develop[ing] guidelines and procedures to assess the risk of a repeat offense by such sex offender and the threat posed to public safety" (Correction Law § 168-l[5]).  The Board developed guidelines and procedures to aid in the risk assessment of offenders, commonly referred to as the Guidelines, based on "criteria that find support in the academic literature and are commonly used by sex offender experts" (Guidelines at 23).  The Board attempted to "make [the Guidelines] as objective as possible [because] . . . unnecessary complexity would frustrate uniform results" (id.).  The Board also "test[ed] the guidelines against a large sample of cases to insure that accurate results were produced" and "invited a panel of experts to review them and propose improvements" before the final Guidelines were issued (id.).  The registration requirement (what crimes are sex offenses) and the risk level (what factors affect the risk of future offense) are not congruent in purpose, source or effect.  The former is based on a legislative judgment about what offenses are sex offenses; the latter based on expert evaluation of the factors that affect the future likelihood of re-offense.

## II.

Jose Perez was arrested for selling crack to an undercover officer in New York City in 1996.  He skipped town while his case was pending.  In 1998, he was arrested in New Jersey for exposing himself, through a window, to a neighboring 12-year-old girl.  The People contend he was convicted of public lewdness and sentenced to two years' probation.  Though public lewdness is an "indictable crime" in New Jersey, it is not a registerable

offense there.  Thus, as of 1998, Mr. Perez was not deemed a sex offender, and was not required to appear in any sex offender registry.  In 2002, he entered the home of an acquaintance in Florida, asked the 10-year-old resident for a glass of water, and then molested her.  He was sentenced to nine years in prison, served seven, and was then released to the custody of New York, where he belatedly served his sentence for the original drug offense.  Upon his release in 2012, Mr. Perez was deported.

Mr. Perez's Florida conviction rendered him a sex offender, which required him to appear on New York's sex offender registry with an appropriate risk-level designation.  As the majority notes, the Board recommended a level-two designation, based on a risk assessment score of 85 points, 30 of which came from a determination that his New Jersey conviction warranted those points under risk factor 9 of the Guidelines.  Before the SORA court, Mr. Perez contended that he should be awarded only five points under risk factor 9, not 30.

One should not take the description of Mr. Perez's SORA proceeding as a "two-part" hearing to mean it was thorough, careful or complete (majority op at 7).  The first part consisted of a total of 14 pages of transcript, three of which were opening and closing pleasantries.  In the remaining 11 pages, the People first explained that the Florida conviction was the offense that required Mr. Perez's registration.  Then, horribly mistaken, the People contended that the assessment of 30 points under risk factor 9 derived from Mr. Perez's previous conviction "in New Jersey of a charge of lewdness, lewd and lascivious conduct . . . on a ten-year-old child."  Understandably confused because the Florida crime, not the New Jersey crime, involved a 10-year-old, defense counsel asked the People

whether they were "requesting 30 points based on a misdemeanor sex crime." The People responded that they were not; instead, they were relying on a "prior sexual offense," as the New Jersey crime was "actually" a felony. The People were, again, incorrect: the defense counsel informed the court that the crime in New Jersey was not for lewd and lascivious conduct but rather lewdness, a distinct crime, that is "not a sex crime in New York." Again, the People, reading from a police report, claimed that Mr. Perez's New Jersey offense was for lewd and lascivious conduct against a ten-year-old. Defense counsel pointed out that the report from which the People and court were reading to establish the facts of the New Jersey crime bore the heading, "Lake Worth [Florida] Police Department." At that point, the People admitted that they "stood corrected," and informed the court that they did not have "information at this time on the underlying facts of the lewdness felony conviction in the State of New Jersey."

Faced with the People's complete retraction of every fact allegedly warranting the imposition of 30 points under risk factor 9, the court offered an adjournment, which the People accepted to "get information about the underlying facts" and "produce additional documentation" as to the New Jersey crime. Before adjourning, defense counsel confirmed that the New Jersey conviction was "not [for] endangering the welfare of a minor," despite the People's contrary suggestions. The People replied that it would "completely retract those statements until the People have information about the underlying New Jersey offense." So much for part one of the two-part hearing.

The second part of the SORA hearing consists of a whopping eight pages of transcript, two of which are taken up by the court's oral ruling. In the remaining six pages,

the People returned with New Jersey case documents regarding Mr. Perez's arrest, but not his indictment or conviction.[1] That omission reflects a deliberate choice by the People to disclaim reliance on the New Jersey statute and rely, instead, on Mr. Perez's conduct. The People specifically relied on the narrative continuation report, containing the victim's statements regarding Mr. Perez's conduct. According to the People, that document supplied "clear and convincing evidence that the New Jersey act involved a 12-year-old child and sexual conduct by the defendant" (emphasis added). The People reaffirmed that they were "relying not on the [New Jersey lewdness] statute itself nor on the fact that while the New Jersey statute was a felony, there is a misdemeanor in the State of New York" (emphasis added). Instead, the People were "relying on the conduct of the defendant underlying the conviction and it involved sexual conduct toward a 12-year-old child" (emphasis added). Defense counsel argued in response that Mr. Perez "was not convicted of sexual conduct"; although "he might have been charged with that," there was no record

---

[1] The documents the People chose to include in the record before the SORA court are muddled. Mr. Perez's SORA Case Summary explains only that, with respect to Mr. Perez's New Jersey criminal record, "the offender is noted as having a prior March 1999 sex offense conviction related to a charge of 'Lewdness' . . . for which he was sentenced to two years probation." However, lewdness is not a sex offense in New Jersey (see New Jersey Statute 2C:14-11; 2C:7-2), undermining the accuracy of the Case Summary. We cannot verify the reliability of the rest of that statement because the papers submitted to the SORA court contain only arrest paperwork originating in December 1998 but no evidence of a conviction. Moreover, the same errors acknowledged and retracted by the People in the SORA hearing persist in Mr. Perez's SORA registry page. His registry page indicates that the date of the crime was 1998 (the date of the New Jersey incident), that the victim was 10 (the age of the Florida victim), that the arresting agency was New Jersey state police (again, the New Jersey incident), that the offense included sexual contact (which applies to the facts of the Florida conviction only), and finally, that the sentence was two years' probation (once more, the New Jersey incident).

of his conviction of that. "The only document turned over . . . indicate[d] [Mr. Perez] committed sexual assault, [and] that [wa]s clearly not the case." From the papers, it did not look like "he was ever charged with sexual assault." Before the conclusion of the case, the People "again" confirmed they were "not relying on the conviction" but on the conduct. The court ultimately declined to depart from the Board's recommendation and adjudicated Mr. Perez a level-two offender. Understandably, given the People's decision to eschew reliance on any New Jersey statute, there is no document in the record showing the New Jersey crime of which Mr. Perez was convicted. The SORA court's decision does not identify the New Jersey criminal statute under which Mr. Perez was convicted.

### III.

Risk factor 9, "Number and Nature of Prior Crimes," allows for three possible point adjudications: 30 points if the offender has prior criminal history that includes a "conviction or adjudication" for a number of crimes including a "misdemeanor sex crime, or endangering the welfare of a child, or any adjudication for a sex offense," 15 points if the "offender has a prior criminal history that includes a felony conviction or adjudication but not for a violent felony or sex crime," or five points if the "offender has a prior criminal history but no convictions or adjudications for a sex crime or felony."[2] According to the specific guidelines for risk factor 9, an offender's prior criminal history is significantly related to his likelihood of sexual recidivism, "particularly when his past includes violent

---

[2] Mr. Perez contended that his prior New Jersey conviction warranted an award of five points under risk factor 9; the People contended that the Board adequately assessed Mr. Perez 30 points under risk factor 9

crimes or sex offenses" (Guidelines at 13). Risk factor 9 incorporates that research by assessing 30 points only "if [the offender] has a prior <u>conviction</u> or <u>adjudication</u>," as emphasized by the Guidelines (<u>id.</u>), to an enumerated list of crimes. Mr. Perez's request for an assessment of just five points comports with his counsel's statement that he was convicted of lewdness, which is not a "sex crime" in New Jersey (or New York for that matter). Assuming, as the majority does, that Mr. Perez was convicted of lewdness under New Jersey Statute 2C:14-4(b)(1),[3] the People expressly disavowed any reliance on the statute of conviction, rendering the majority's rationale completely unpreserved. The only argument preserved by the People below – that Mr. Perez's <u>conduct</u> warranted the assessment of 30 points – cannot be considered under risk factor 9, which requires a conviction or adjudication. Therefore, the majority's suggestion that relying on Mr. Perez's conduct rather than a conviction or adjudication "adheres to the plain language of the Correction Law and the Guidelines" flouts the express language and genesis of the SORA Guidelines (majority op at 12), and the order of the Appellate Division should be reversed.

Because risk factor 9 requires a conviction or adjudication, and the People repeatedly argued before the SORA court that they were not relying on a New Jersey conviction, the Guidelines do not permit the assessment of 30 points. In fact, the

---

[3] Those investigatory documents do not list the New Jersey statute for lewdness and, instead, contain references only to New Jersey Statute 2C:14-2(b). That crime, at the time of the incident in which Mr. Perez was involved, was called "tender years sexual assault" (<u>see State v Zeidell</u>, 154 NJ 417 [1998]). However, the investigatory documents in the record label it "lewdness," evincing clear confusion.

Guidelines instruct users that risk factor 9 requires a "crime," which includes only "criminal convictions, youthful offender adjudications and juvenile delinquency findings" (Guidelines at 6). Those are the only three determinations that are considered by the Board to be "reliable indicators of wrongdoing" (id.). The Guidelines do not permit replacement of "crime" with "conduct." According to the Guidelines, that would be true even if Mr. Perez had admitted to such conduct: "Where an offender has admitted committing an act of sexual misconduct for which there has been no such judicial determination, it should not be used in scoring his criminal history" (id. [emphasis added]). By allowing the use of conduct when the People have expressly disclaimed reliance on any particular conviction or adjudication to justify points under factor 9, the majority is casting aside the expert foundation on which that risk factor and corresponding instructions are based and replacing it with a purely policy-oriented judgment of its own making. Doing so undermines the very legitimacy of the Guidelines.

IV.

How should a SORA court determine whether an out-of-state conviction is a "misdemeanor sex crime" or a "sex offense" warranting 30 points under risk factor 9? The appropriate analytical method is straightforward. Rather than insisting that they were not relying on Mr. Perez's conviction in New Jersey, had the People instead relied on Mr. Perez's lewdness conviction, a crime that includes a sexual component, an award of 30 points would be appropriate. If Mr. Perez's crime had no sexual component in its definition, 30 points could not be awarded. Even so, if the underlying circumstances showed sexual conduct as part of the crime, the Guidelines address that circumstance by

providing for an upward departure based on the conduct. Under that method, no comparison to the New York Penal Code is necessary: whether a New York statute contains a particular element has no bearing on the expert analyses on which the Board's risk assessments are based.

Requests in the alternative for an upward departure are often made. Here, even having erroneously chosen to disregard the New Jersey conviction and rely instead on Mr. Perez's conduct, the People could have contended that his conduct was an aggravating circumstance not adequately taken into account by the Guidelines, warranting an upward departure (see People v Gillotti, 23 NY3d 841, 861 [2014]). The majority appears to recognize that an upward departure would have been the preferable outcome here where the issue arises "from a gap . . . which fails to specifically account" for evidence that should be considered for the purposes of evaluating an offender's risk of re-offense (majority op at 8). As clear as the Guidelines are that risk factor 9 requires a conviction or adjudication, they are equally clear that where there is evidence of conduct but no evidence of a conviction or adjudication, a request for an upward departure is the means by which conduct may be taken into account. For example, where an offender has confessed to a crime but there had been no judicial determination, the Guidelines note that such an admission "may . . . form the basis for an upward departure if there is clear and convincing evidence that the conduct occurred" (Guidelines at 7). The Guidelines' "flexible approach that allow[s] the consideration of underlying conduct" (majority op at 11) appears in the allowance for departures; the risk factors are meant to be calculated as per the instructions accompanying them. Here, the People inexplicably did not seek an upward departure.

Instead of addressing that lapse by reformulating risk factor 9 to remove its expert foundation, we should avoid that Guideline carnage and reverse, with the expectation that the lapse will not be repeated.

V.

Because the People failed to preserve any argument based on Mr. Perez's lewdness conviction, the majority decides to borrow the inapposite "essential elements" test from North. By that means, the majority holds Mr. Perez's conduct was "tantamount to endangering the welfare of a child under New York law" (majority op at 2). But, North is inapplicable here; as the majority acknowledges, North applies "with respect to registrable offenses" (majority op at 9). That is, North identifies "registerable offenses" based on legislative judgments as to what constitutes a "sex offense" – not expert judgments about what factors affect the likelihood of future offense. North's holding makes its narrow application all the more clear; there, we "conclude[d] that the 'essential elements' provision in SORA requires registration whenever an individual is convicted of criminal conduct in a foreign jurisdiction that, if committed in New York, would have amounted to a registrable New York offense" (North, 8 NY3d at 753 [emphasis added]). The essential elements provision that the North Court purports to interpret is a provision of Correction Law § 168-a(2)(d), which mandates registration in New York if a person is convicted in a foreign jurisdiction of a crime containing "all of the essential elements" of a registrable New York offense (North, 8 NY3d at 748-749). The export of the essential elements test to risk factor 9 makes no sense: it is an interpretation of statutory language that, although present in the Correction Law for the purposes of registration, is not present in Correction Law § 168-l,

the section of the statute that creates a board of "experts in the field of the behavior and treatment of sex offenders," charged with "develop[ing] guidelines and procedures to assess the risk of a repeat offense by such sex offender and the threat posed to the public safety."

Although the majority asserts that the "analysis set forth in North is equally apt" in this context (majority op at 11), the legislature did not agree. Rather, the legislature opted to create two distinct provisions, one based on policy judgments about what crimes to call "sex offenses," and the other to create a board of experts to develop psychologically-based risk factors incorporated into an assessment tool (compare Correction Law § 168-a[2][d] with Correction Law § 168-l). One simple way to observe the incongruity of equating the registration requirements and risk factors is to note that the legislature determined that Murder and Arson are not registerable sex offenses, but the Board determined that murderers and arsonists must be awarded 30 points under risk factor 9 because of the relationship of those crimes to the likelihood of sex crime re-offense.

That the essential elements test in the registration context is distinct from the considerations for the purpose of risk assessment is clear even from our analysis in North, where we rejected applying a strict equivalency test derived from the criminal enhanced sentencing context to SORA registration because, "in the enhanced sentencing cases, we have not used the phrase 'essential elements,' much less characterized the relevant inquiry as an 'essential elements' test" (North, 8 NY3d at 751). Applying that analysis here would prevent the use of North's essential elements test, where the statute codifying the Guidelines and the Guidelines themselves do not use the phrase "essential elements."

Even were we to accept the application of the North test, it would not provide a basis for affirmance here.[4]  The first step of the North test is to compare statutory elements to statutory elements.  Here, the People relied solely on Mr. Perez's conduct before the SORA court.  The SORA court likewise based its decision on evidence of Mr. Perez's conduct, not New Jersey statutory elements.   Thus, we cannot accurately compare the "elements" of that conduct to New York's Penal Code.

Indeed, putting the preservation problem aside, the majority's attempt to apply North on the basis of Mr. Perez's lewdness conviction exposes how inapt that standard is when applied to the risk assessment context.  Under 2C:14-4(b)(1), a defendant is guilty of lewdness when "he exposes his intimate parts for the purpose of arousing or gratifying [his] sexual desire . . . under the circumstances where [he] knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where [he] is at least four years older than the child."[5]   Endangering the welfare of a child in New York instead requires a defendant to knowingly act in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than 17 years old (Penal Law § 260.10[1]).  North

---

[4] The majority dismisses the strict equivalency approach as inapposite because the purpose of SORA, an accurate determination of the risk a sex offender poses to the public, is distinct from the penal purposes of enhanced sentencing (majority op at 11).  Although I agree with that distinction, we should laud – not deride – the protections the strict equivalency test provides against the imposition of a sentence "based on the mere accusations underlying the foreign conviction – allegations, of course, of which defendant may not have been convicted" (majority op at 10, citing People v Helms, 30 NY3d 259, 263-264 [2017]).

[5] Under 2C:14-2(b), at the time of Mr. Perez's conduct, a defendant would be guilty of sexual assault if "he commits an act of sexual contact with a victim who is less than 13 years old and [he] is at least four years older than the victim," where sexual contact includes "self-contact" (Zeidell, 154 NJ at 431).

instructs courts to "review the conduct underlying the foreign conviction to determine if that conduct is, in fact, within the scope of the New York offense" if the foreign conviction criminalizes conduct not covered by the New York offense (majority op at 10, 15, citing North, 8 NY3d at 753). That standard does not answer the threshold question: which of the New Jersey statutes do we compare to the New York statute? The next question is similarly basic: to which New York statute must we compare the New Jersey conduct? Only then could we begin a North analysis.

The majority does not satisfactorily explain why we should compare Mr. Perez's lewdness conviction to the New York statute for endangering the welfare of a child. Neither the People nor Mr. Perez has ever contended that his conviction was for "endangering the welfare of a child." The only mention of endangering the welfare of a child came from the People's inaccurate allocution on the first day of the SORA hearing, which was based on counsel's clear mistake in thinking the Florida conviction was the New Jersey conviction. Once defense counsel pointed out that the People had moved an entire Florida city into the Garden State, the People expressly disavowed their reliance on endangering the welfare of a child. Here again, the majority bases its holding on a proposition the People expressly disavowed.

Moreover, a comparison of the elements of the New Jersey lewdness statute to that of the New York endangering the welfare of a child statue does not reflect "considerable . . . overlap" as the majority suggests (majority op at 13), but rather considerable discord, making it an unnatural fit. The New Jersey statute requires (1) exposure of intimate parts (2) for the purpose of arousal or gratification (3) where the defendant knows or expects to

be observed (4) by a child under 13 years old and (5) the defendant is at least four years older than the child. The elements of endangering the welfare of a child are not parallel: the defendant must (1) knowingly act in a manner (2) likely to be injurious to the physical, mental or moral welfare of (3) a child less than 17 years old. The only true comparison is the age of the victim, but even there, the New Jersey threshold is lower than New York's. As the majority admits, the knowledge elements pertain to different aspects of the crimes (majority op at 14). Instead, the majority offers only a conclusory statement explaining that North allows for a comparison between an out-of-state conviction with "any" registrable New York offense; extrapolating that to the risk assessment context, the majority concludes that we may compare an out-of-state conviction with any offense that will result in an award of 30 points under the Guidelines (majority op at 13 n 9). That circular argument provides no response to the fact that North purports to interpret the legislature's intent as to registrability, while the Guidelines are intended solely to relate to the risk of re-offense as determined by experts in the field. Those, as discussed above, are fundamentally different determinations.

Even if one were to accept the majority's framework of comparing New York and New Jersey statutes, and give the People a couple of free passes on preservation, the straightforward comparison would be of the two states' lewdness statutes. The only rationale offered by the majority for abandoning the obvious comparator here, New York Penal Law § 245.00, is that the New York statute does not require that the victim be a minor, unlike the New Jersey lewdness statute and the New York endangering the welfare of a child statute (majority op at 13 n 9). That reasoning does not comport with intent of

the Guidelines, which requires the assessment of points under risk factor 9 for crimes against both victims who are minors and those who are not. In fact, the New York lewdness statute more readily satisfies North's guidance as to "analogous" offenses with significantly overlapping elements. As relevant to Mr. Perez, public lewdness under Penal Law § 245.00 consists of the exposure of a person's private or intimate parts in a lewd manner or the commission of any other lewd act, in private premises under circumstances where the exposure may be readily observed by persons outside those premises (Penal Law § 245.00[b][1]). But, because the New York statute does not require sexual gratification, as does the New Jersey lewdness statute, under the majority's North-based framework, Mr. Perez would receive five points, not 30, under risk factor 9.

Because those elements do not match up, the majority turns back to conduct. The principal problem in comparing Mr. Perez's conduct to that of New York's statutes is that Mr. Perez was not tried or convicted in New York. Nothing in the record supports the majority's assertion that New York district attorneys prosecute conduct like Mr. Perez's under both the lewdness and endangering the welfare of a child statutes. Of course, Mr. Perez's conduct occurred in New Jersey, so New York could not have prosecuted him for it, but the majority's hypothetical New York prosecution for both lewdness and endangering the welfare of a child may not have resulted in a conviction for the latter (or for either). In essence, the majority is attempting to use Mr. Perez's unspecified New Jersey conviction via a fictional New York trial to secure a hypothetical conviction of a crime that would have resulted in an award of 30 points under risk factor 9. The Guidelines do not permit that.

\*\*\*

The People initially advanced a theory of equivalency between New York's endangering the welfare of a child statute and New Jersey's lewdness statute, but expressly renounced that theory when they realized they had been reading from the wrong script. The sole issue the People preserved was that risk factor 9 permitted the assessment of 30 points based on Mr. Perez's conduct. The majority's resolution – that Mr. Perez's conviction was comparable under <u>North</u>'s essential elements test to a conviction of endangering the welfare of a child – is wholly unpreserved. In any event, it is unsupported by, and indeed in contravention of, the Guidelines and the legislature's mandate that a board of experts determine how to measure the risk of future offense. Because risk factor 9 requires a conviction or adjudication for the award of points, the SORA court improperly assessed Mr. Perez 30 points based on his "conduct." I therefore dissent.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Order affirmed, without costs. Opinion by Judge Feinman. Chief Judge DiFiore and Judges Stein and Garcia concur. Judge Fahey concurs in result in an opinion. Judge Wilson dissents in an opinion in which Judge Rivera concurs.

Decided March 26, 2020